David L. STRATMON, Jr., Appellant,

v.

UNITED STATES, Appellee.

No. 85–CF–561.

District of Columbia Court of Appeals.

Argued Sept. 18, 1992.
Decided Sept. 9, 1993.

Mindy A. Daniels, appointed by this court, for appellant.

Michael F. Tubach, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John R. Fisher, Elizabeth Trosman, and Barbara J. Valliere, Asst. U.S. Attys., were on the brief, for appellee. Helen M. Bollwerk, Asst. U.S. Atty., also entered an appearance for appellee.

Before ROGERS, Chief Judge, and TERRY and STEADMAN, Associate Judges.

TERRY, Associate Judge:

Appellant was convicted of assault with intent to kill while armed and assault with intent to rape while armed, both offenses in violation of D.C.Code §§ 22–501 and 22–3202 (1989). He appealed from his conviction, raising three claims of error, but the judgment of conviction was affirmed by this court in an unpublished memorandum opinion and judgment. *Stratmon v. United States*, No. 85–561 (D.C. June 16, 1988). After a petition for rehearing and rehearing en banc was denied, this court issued its mandate on September 27, 1988.

On March 25, 1992, after the filing of several pleadings, this court entered an order granting appellant's motion to recall the mandate in order "to consider more fully and then decide" whether appellant had been denied his Sixth Amendment right to the effective assistance of appellate counsel. We further permitted the parties to submit supplemental briefs discussing the impact of this court's decision in *Scott v. United States*, 559 A.2d 745 (D.C.1989) (en banc) (*"Scott II"*), on the instant case. Now, after additional argument, we conclude that appellant's counsel on appeal was not ineffective; hence we direct the clerk of the court to reissue the mandate.

## I. Background

Appellant Stratmon was convicted after a jury trial in the Superior Court before Judge Murphy. While the trial was going on, Judge Murphy was engaged in employment discussions with the United States Department of Justice (DOJ). Judge Murphy and representatives of DOJ had conferred in October and December 1984 about his possible appointment as Assistant Director for Debt Collection in the Executive Office for United States Attorneys. Following these two meetings, but before a formal expression of his interest in being considered for the job, Judge Murphy heard argument and decided pre-trial mo-

tions in appellant's case. On December 24, 1984, Judge Murphy formally asked DOJ to consider him for the position. Appellant's trial began on January 16 and ended on January 18, 1985. Judge Murphy was offered the DOJ job on February 6, 1985, and two days later he informed both the Chief Judge of the Superior Court and the District of Columbia Commission on Judicial Disabilities and Tenure that he had decided to accept the offer and retire from the bench by the middle of April. The judge never disclosed the existence of these job negotiations to appellant, appellant's trial counsel, or the Assistant United States Attorney prosecuting the case.

Appellant was sentenced by Judge Murphy on April 8, 1985, to fifteen years to life on each count. The sentences were ordered to run concurrently with each other, but consecutively to any other sentence then being served. An additional term of eighteen to fifty-four months was added to appellant's sentence in accordance with D.C.Code § 23–1328(a)(1) (1989), which authorizes such enhancement when a crime is committed while the defendant is on pre-trial release.

After appellant was convicted, his trial counsel filed a notice of appeal, but soon thereafter he withdrew from the case. This court then appointed James Frick, Esquire, to represent appellant on appeal, but Mr. Frick withdrew as well before filing a brief. We then appointed Calvin Steinmetz, Esquire, to represent appellant on appeal. Mr. Steinmetz, who was unaware that Judge Murphy had been engaged in employment negotiations with DOJ during his client's trial, filed a brief raising three claims of error. We heard oral argument on April 26, 1988, and on June 16, 1988, we issued our unpublished opinion rejecting all three arguments [1] and affirming the judgment of conviction. Mr. Steinmetz filed a petition for rehearing and rehearing en banc on August 3. That petition was de-

---

1. Mr. Steinmetz, on appellant's behalf, argued that the trial judge had erroneously kept the defense from obtaining a psychiatric report on the victim, that the trial judge had erroneously

allowed the government to prove an earlier assault with intent to rape and intent to kill involving another victim, and that the evidence was insufficient to support the convictions.

nied on September 19, and the mandate was issued on September 27, 1988.[2]

Meanwhile, on December 4, 1987, a panel of this court issued its decision in *Scott v. United States*, 536 A.2d 1040 (D.C.1987) (*"Scott I"*). The *Scott* case involved a challenge to the conviction of Monroe Scott based on the same underlying facts, *viz.*, Judge Murphy's negotiations for employment with DOJ while presiding over Mr. Scott's trial.[3] In *Scott I* the court considered whether Judge Murphy had violated the Code of Judicial Conduct ("the Code") by simultaneously negotiating for employment with DOJ while presiding over a criminal trial being prosecuted by an office which was part of DOJ.[4] A majority of the court assumed, without expressly holding, that Judge Murphy's conduct violated Canon 3(C)(1) of the Code,[5] *id.* at 1045, but held that the violation was harmless. *Id.* at 1049.[6] One judge dissented, concluding that the violation was not harmless and that Scott was entitled to a new trial. *Id.* at 1051–1056 (Rogers, J., dissenting).

The panel opinion in *Scott I* was vacated on June 20, 1988, when the court agreed to rehear the case en banc. *Scott v. United States*, 543 A.2d 346 (D.C.1988). Oral argument before the full court took place on October 3, 1988, and our en banc decision in *Scott II* was issued on May 10, 1989.

On rehearing en banc the court unanimously reversed Scott's conviction and remanded the case for a new trial.[7] We first ruled that Judge Murphy's conduct did in fact violate Canon 3(C)(1). *Scott II, supra,* 559 A.2d at 750. Next, we rejected use of the traditional harmless error test to assess the impact of the judge's conduct, concluding that the traditional test could not accurately determine whether Mr. Scott had been fairly convicted and sentenced because that test presumes the existence of an impartial judge. *See Rose v. Clark*, 478 U.S. 570, 578, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986). In addition, we held that application of such a test under the circumstances was inconsistent with the goal of Canon 3(C)(1), which is to prevent even the appearance of judicial impropriety. We adopted instead the "special harmless error" test formulated by the Supreme Court in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988).[8] This test

---

2. Under D.C.Ct.App.R. 41(a), the mandate of the court is issued twenty-one days after the entry of judgment, but its issuance is stayed by the timely filing of a petition for rehearing or rehearing en banc. If such a petition is filed and is later denied, the mandate is issued seven days after entry of the order denying the petition. Typically, the mandate consists of a certified copy of the judgment, a copy of the court's opinion, if any, and any direction as to costs.

3. *Scott* came to this court on appeal from the denial of a motion to vacate the judgment of conviction and grant a new trial pursuant to D.C.Code § 23–110 (1989).

4. In the District of Columbia, all felony violations of the District of Columbia Code are conducted in the name of the United States by the United States Attorney for the District of Columbia, or by his or her assistants. D.C.Code § 23–101(c) (1989). The United States Attorney's Office is part of the United States Department of Justice.

5. Canon 3(C)(1) provides in part that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned...." The entire Code applies to judges of both the Superior Court and

this court. *See Scott II, supra,* 559 A.2d at 748 n. 6.

6. The majority found the error harmless because there was no evidence that the judge had invaded the role of the jury or "demonstrated prejudice either in favor of the government or against the accused" at trial. *Scott I, supra,* 536 A.2d at 1049. Similarly, the majority had "no reason to believe that appellant's sentencing hearing was conducted any differently or that the sentence imposed reflected bias on the part of Judge Murphy." *Id.* Nevertheless, the majority concluded that "since sentencing is such a personal judgment for the judge imposing it, we think it just under the circumstances to remand for resentencing." *Id.* (citations omitted). The resentencing, of course, would take place before a different judge, since by that time Judge Murphy had left the court.

7. One judge wrote a separate opinion concurring in the result. 559 A.2d at 761.

8. This special harmless error test was applied in *Liljeberg* to a violation of the federal disqualification statute, 28 U.S.C. § 455 (1988). We held that because Canon 3(C) was incorporated into the federal statute, the rationale of *Liljeberg* was

requires a reviewing court to consider three "risks" which might result from denying relief: "the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." *Id.* at 864, 108 S.Ct. at 2205. Applying this test, *see Scott II, supra,* 559 A.2d at 753–755, we held that Mr. Scott was entitled to a new trial, not merely a resentencing, "in order to assure the continued public confidence in the integrity of the judiciary." *Id.* at 756 (footnote omitted). We have followed *Scott II* and *Liljeberg* in subsequent cases. *See Foster v. United States,* 615 A.2d 213, 220–222 (D.C. 1992) (applying *Liljeberg* to *ex parte* communication between judge and parole commission); *In re J.A.,* 601 A.2d 69, 78 (D.C. 1991) (applying *Liljeberg* to courtroom conduct reflecting bias); *Belton v. United States,* 581 A.2d 1205, 1212–1215 (D.C. 1990) (applying *Liljeberg* to *ex parte* communication between judge and third parties, after trial but before sentencing, about defendant's criminal activities); *see also In re Continental Airlines Corp.,* 901 F.2d 1259, 1261–1262 (5th Cir.1990) (applying *Liljeberg* to case in which judge solicited employment with firm appearing before him); *Parker v. Connors Steel Co.,* 855 F.2d 1510, 1523 (11th Cir.1988) (applying *Liljeberg* to case in which judge's law clerk was related to partner in firm appearing before that judge), *cert. denied,* 490 U.S. 1066, 109 S.Ct. 2066, 104 L.Ed.2d 631 (1989).

## II. THE PRESENT STATUS OF THE CASE

■ Under this court's Rule 41(c), a motion to recall the mandate will be granted when a claim of ineffective assistance of appellate counsel is "found by [this] court to have sufficient merit" to justify the recall. *Watson v. United States,* 536 A.2d 1056, 1061 (D.C.1987) (en banc) (emphasis deleted), *cert. denied,* 486 U.S. 1010, 108 S.Ct. 1740, 100 L.Ed.2d 203 (1988); *see*

applicable to a violation of the canon as well. *Scott II, supra,* 559 A.2d at 749.

*Griffin v. United States,* 598 A.2d 1174, 1175–1176 (D.C.1991). If this requirement is met, we will recall the mandate and reopen the appeal "in order to fully explore and then decide whether there was ineffective assistance...." *Watson, supra,* 536 A.2d at 1061; *see Head v. United States,* 626 A.2d 1382, 1383–1384 (D.C.1993).

On March 24, 1989, represented by new counsel, appellant filed a motion in this court to recall the mandate.[9] The motion argued that the failure of his prior appellate counsel to raise the issue which had been raised in the *Scott* case constituted ineffective assistance and required that his convictions be reversed. After several additional pleadings and memoranda were filed by both parties, we ordered an evidentiary hearing by the trial court and directed it to make factual findings on three issues: (1) whether and when appellant's trial counsel was made aware of Judge Murphy's employment negotiations with DOJ; (2) how appellate counsel determined which issues to raise on appeal, and why he failed to raise the issue of Judge Murphy's apparent conflict of interest; and (3) whether the government would be prejudiced in its ability to reconstruct its case for retrial. After an evidentiary hearing, Judge Milliken of the Superior Court wrote detailed findings of fact and returned the case to us. We then entered an order concluding that "appellant's claim of ineffective assistance has sufficient merit to warrant recalling the mandate in order to consider more fully and then decide the issue," citing *Watson v. United States, supra.* We granted the government's request for leave to file a supplemental brief, and then heard oral argument on the ineffective assistance claim.

At the hearing before Judge Milliken, three witnesses testified: Joseph Hillegas, appellant's trial counsel; Calvin Steinmetz, his previous appellate counsel; and William Currier, the former Assistant United States Attorney who prosecuted the case. We

9. The timeliness of the motion is not in dispute. Rule 41(c) provides that such motions must be filed "within 180 days from the issuance of the mandate."

summarize Judge Milliken's findings of fact on the three issues presented.

### A. *Trial counsel's awareness of Judge Murphy's employment negotiations with DOJ*

Mr. Hillegas was appointed as appellant's trial counsel in May 1984 and continued to represent him through sentencing on April 8, 1985. Judge Milliken found that Mr. Hillegas did not become aware of the judge's employment discussions with DOJ either before or during the trial. The findings note that Mr. Hillegas was interviewed by a *Washington Post* reporter in February 1985 (*i.e.*, after appellant's trial, but before sentencing). He expressed regret about the judge's pending retirement and described Judge Murphy as "an extremely fair and efficient trial judge." [10] Mr. Hillegas did not ask Judge Murphy to recuse himself from appellant's sentencing merely because the judge was going to DOJ "to collect student loans." According to Judge Milliken, Hillegas " 'did not connect the potential of any impropriety' in [Judge Murphy's] taking that position with the defendant's sentencing." Mr. Hillegas did not recall telling his client that the judge was leaving the bench to take a position with DOJ.

Judge Milliken concluded that Mr. Hillegas learned of Judge Murphy's employment negotiations with DOJ at some point between the conclusion of appellant's trial (January 18) and the date of his interview by the *Washington Post* (approximately February 8).

### B. *How appellate counsel determined which issues to raise on appeal*

Calvin Steinmetz was appointed to represent appellant on appeal in May 1987, *i.e.*, two years after appellant's sentencing and the *Washington Post* article publicizing Judge Murphy's retirement from the bench.[11] Mr. Steinmetz reviewed the case

file and met with his predecessor counsel, Mr. Frick, to consider possible grounds for an appeal. At that time, Mr. Steinmetz testified, he was unaware of Judge Murphy's potential conflict of interest. He then asked an associate to review the trial transcript in order to "isolate issues." After discussing the case with his associate, reviewing her notes, and personally reading the trial transcript, he decided to challenge appellant's convictions on three grounds (see note 1, *supra*). He then met with appellant and sought his input on the appeal.

The decision in *Scott I* was issued in December 1987, after Mr. Steinmetz had filed his brief. Steinmetz testified that he read the *Scott I* opinion "some time thereafter—most likely before the *Stratmon* oral argument [on April 26, 1988], and certainly before May 10, 1989, when [this court] issued its *en banc* decision in *Scott II*]." He recalled interpreting the panel opinion as concluding that Judge Murphy's conduct violated Canon 3(C)(1), but that the violation was harmless error. Judge Milliken found that Mr. Steinmetz was "unsure" whether, while reading the opinion in *Scott I*, "he actually considered but rejected raising Judge Murphy's possible conflict of interest, or whether he simply did not recognize the similarities between the defendant's case and that of Monroe Scott."

Judge Milliken concluded that the evidence did not "permit a clear finding" as to when Mr. Steinmetz read the opinion in *Scott I*, and that none of appellant's several attorneys except the one who represents him now "appreciated the need to raise the issue of judicial impropriety."

### C. *Whether the government would be prejudiced if appellant's case had to be retried*

William Currier was the Assistant United States Attorney who investigated, indicted,

---

**10.** Judge Murphy served with distinction for more than eighteen years on the Superior Court bench. In this case, as in *Scott*, "his good reputation is not at issue...." *Scott II, supra,* 559 A.2d at 749.

**11.** Mr. Steinmetz replaced appellant's original appointed appellate counsel, James Frick. Mr. Steinmetz is a partner in a small law firm and,

at the time of the hearing before Judge Milliken, had been in practice for fourteen years. During that period he had devoted approximately one-quarter of his time to criminal defense work. He estimated at the hearing that he had written approximately 140 appellate briefs for criminal defendants.

and presented the government's case against appellant at trial. He testified that the government's two "main witnesses" at trial were the victim, Ms. C., and the witness who testified about the prior assault, Ms. B. Mr. Currier said that this case stood out in his mind because the preparation of these witnesses had been "exceedingly difficult," a fact which he attributed to the emotional state of each witness. Ms. B. was "inconsolable for some minutes" whenever appellant's attack on her was discussed, and at trial she testified with "extreme difficulty and obvious emotional trauma." Ms. C., on the other hand, was "very hostile" and was "extremely angry with the police department because of the way the incident unfolded and the lack of help she got after she had been assaulted." Mr. Currier testified that it took a great deal of effort and the assistance of a psychologist to establish a trust relationship with her so that she would cooperate in appellant's prosecution.

Despite these problems, Judge Milliken concluded that a retrial would not unduly prejudice the government because both of the principal witnesses were still available, as was the relevant physical evidence.

## III. EFFECTIVENESS OF COUNSEL

### A. *The applicable legal standard*

■ A convicted defendant claiming ineffective assistance of counsel must make a two-part showing. *See Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984). First, he or she must establish that "the attorney's performance 'fell below an objective standard of reasonableness.'" *Watson v. United States, supra,* 536 A.2d at 1065 (quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064). That is, there must be a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland, supra,* 466 U.S. at 687, 104 S.Ct. at 2064; *see also Engle v. Isaac,* 456 U.S. 107, 134, 102 S.Ct. 1558, 1575, 71 L.Ed.2d 783 (1982) (defendant entitled to a "fair trial and a competent attorney"); *Cuyler v. Sullivan,* 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980) (defendant entitled to "adequate legal assistance"); *McMann v. Richardson,* 397 U.S. 759, 770, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970) (defendant entitled to "reasonably competent counsel"). Second, the defendant must demonstrate prejudice; *i.e.,* he or she "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland, supra,* 466 U.S. at 694, 104 S.Ct. at 2068; *see United States v. Cronic,* 466 U.S. 648, 655–657, 104 S.Ct. 2039, 2044–46, 80 L.Ed.2d 657 (1984); *Cuyler, supra,* 446 U.S. at 343, 100 S.Ct. at 1715–17.

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied upon as having produced a just result.

*Strickland, supra,* 466 U.S. at 686, 104 S.Ct. at 2064, quoted in *Watson, supra,* 536 A.2d at 1065.

■ In applying *Strickland* we must keep in mind two additional principles. First, our "scrutiny of counsel's performance must be highly deferential" and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...." *Strickland, supra,* 466 U.S. at 689, 104 S.Ct. at 2065. Such deference is required because "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* Second, as the government correctly argues, the analysis of counsel's performance typically must be comprehensive, *i.e.,* not narrowly limited to a review of counsel's failings. *See Kimmelman v. Morrison,* 477 U.S. 365, 386, 106 S.Ct. 2574, 2589, 91 L.Ed.2d 305 (1986) (counsel's "overall performance throughout the case" is the proper focus of judicial review); *Watson, supra,* 536 A.2d at 1062 n. 17. In *Kimmelman,* for example, the Court held that counsel had been ineffective only after finding that counsel's errors

were "pervasive." 477 U.S. at 386, 106 S.Ct. at 2588–89; *see also, e.g., Quartararo v. Fogg,* 679 F.Supp. 212, 248 (E.D.N.Y.) (holding that combination of counsel's failure to make opening statement, failure to object to inadmissible and damaging evidence, failure to object to prosecutor's grossly inflammatory summation, and an inadequate summation of his own added up to ineffective assistance), *aff'd without opinion,* 849 F.2d 1467 (2d Cir.1988).[12]

Appellant predicates his claim that his prior appellate counsel was ineffective solely on one asserted lapse, namely, counsel's failure to raise Judge Murphy's apparent conflict of interest either at oral argument or in his petition for rehearing en banc.[13] From cases such as *Kimmelman,* however, we conclude that the failure to raise a particular issue will not, as a general rule, constitute deficient performance under *Strickland* unless it is "sufficiently egregious and prejudicial." *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986) (citations omitted); *see Smith v. Murray,* 477 U.S. 527, 535–536, 106 S.Ct. 2661, 2666–2667, 91 L.Ed.2d 434 (1986) (counsel's tactical decision not to raise one argument on appeal does not make his representation deficient under *Strickland*); *Evitts v. Lucey,* 469 U.S. 387, 394, 105 S.Ct. 830, 835, 83 L.Ed.2d 821 (1985) (counsel "need not advance *every* argument, regardless of merit, urged by the appellant" (emphasis in original)). We must therefore consider whether Mr. Steinmetz's failure to raise the appearance-of-partiality issue was "sufficiently egregious and prejudicial" to require us to hold, under the first prong of *Strickland,* that his

performance fell below an objective standard of reasonableness. We divide our inquiry into two parts, examining first the charge of ineffectiveness on the direct appeal, and next the charge of ineffectiveness on the petition for rehearing and rehearing en banc.

### B. *Effectiveness of counsel on direct appeal*

■ Judge Milliken's findings do not tell us whether Mr. Steinmetz's failure to raise the conflict of interest issue was intentional or inadvertent. In either event, however, we cannot conclude that it resulted in a violation of appellant's Sixth Amendment right to the effective assistance of counsel.

Under the law at the time the appeal was argued, namely *Scott I,* Mr. Steinmetz could have reasonably decided as a tactical matter not to raise the issue of Judge Murphy's conflict of interest. *Scott I,* after all, at best entitled his client to a remand for resentencing. As appellant's present counsel acknowledged at oral argument, appellant did not receive the maximum sentence from Judge Murphy for his crimes, so that the possibility of a resentencing carried with it a risk that he would receive a more severe sentence from a different judge.[14] *But see North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Moreover, appellant has not rebutted the presumption that this was a strategic decision, although it is his burden under *Strickland* to do so. We conclude, therefore, that if the decision not to raise the conflict of interest issue was tactical, it cannot be characterized as sufficiently egregious as to constitute ineffec-

**12.** This does not mean, however, that there must be multiple deficiencies in counsel's performance before a court may find ineffective assistance. In some circumstances, which we need not precisely define here, a single act or omission by counsel may be so serious as to give rise to a Sixth Amendment violation.

**13.** More precisely, appellant contends that the December 1987 panel opinion in *Scott I* should have alerted Mr. Steinmetz to the issue, and that he therefore should have raised it at oral argument in this appeal in April 1988. He further contends that, once the court decided on June 20, 1988—four days after our decision in the

instant case—to rehear the *Scott* case en banc, Mr. Steinmetz should have argued the conflict of interest issue in his petition for rehearing and rehearing en banc, which was filed in August.

**14.** Mr. Steinmetz testified at the hearing before Judge Milliken that, to the best of his recollection, neither appellant nor his trial counsel (Mr. Hillegas) nor his prior appellate counsel (Mr. Frick) suggested "any type of issue to raise on appeal" about the sentence imposed by Judge Murphy. Steinmetz would have been receptive to such a suggestion because, he said, "I do raise sentencing issues on appeal."

tive assistance. *See, e.g., Taylor v. United States,* 565 A.2d 992, 993–994 (D.C.1989) (defendant who was erroneously advised as to risk of resentencing did not receive ineffective assistance because his attorney could reasonably "believe, given the absence of binding law in this jurisdiction, that it was best for appellant not to appeal" (footnote omitted)).

On the other hand, if the failure to raise the conflict of interest issue was inadvertent, the result would be no different. There is no reason to believe that the opinion in *Scott I* raised any red flags for Mr. Steinmetz. *Scott I* was decided after he had filed his brief, had no relevance to the three issues he had raised in his brief, and resulted only in a finding of harmless error. In actuality, then, the central "failing" of appellate counsel was his failure to recognize that Scott's trial had taken place at roughly the same time as that of his client and that the same judge had presided over both trials. Moreover, the only person who could have made the connection between *Scott* and this case—appellant's trial counsel, who knew about Judge Murphy's dealings with DOJ before appellant was sentenced—did not mention the matter to Mr. Steinmetz, apparently because (as Judge Milliken found) trial counsel saw no "potential of any impropriety" connecting the judge's activities with appellant's sentencing. Thus we find it altogether unremarkable that Mr. Steinmetz failed to raise the *Scott* issue at oral argument in April 1988.

Similarly, it cannot be said that Mr. Steinmetz had constructive notice of a possible claim under *Scott I* based on manifestations of bias in the trial record. Appellant's trial counsel testified before Judge Milliken that he saw no evidence of bias in Judge Murphy's handling of the case. Further, the trial record was independently reviewed by Mr. Steinmetz and by his associate, and neither of them saw any signs of judicial bias there.[15] Finally, before filing his brief, Mr. Steinmetz met with appellant to discuss the substance of the brief and to solicit information about other possible avenues to pursue on appeal. Appellant never provided any information that would have led Mr. Steinmetz to consider a *Scott* claim.[16]

■ The Constitution mandates competent counsel, not error-free counsel, and the Sixth Amendment is not violated simply because all possible claims of error are not raised on appeal. *See, e.g., Engle v. Isaac, supra,* 456 U.S. at 133–134, 102 S.Ct. at 1574–1575. We cannot say that counsel's conduct "so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied upon as having produced a just result." *Strickland, supra,* 466 U.S. at 686, 104 S.Ct. at 2064. We agree with the government that the Constitution guarantees only the effective assistance of counsel,[17] not the kind of "superhuman representation" that appellant now claims he was entitled to receive.

### C. *Effectiveness of counsel on petition for rehearing and rehearing en banc*

Whether Mr. Steinmetz's failure to raise the *Scott* issue in his petition for rehearing and rehearing en banc amounted to ineffective assistance is an easier question to answer in the negative. Mr. Steinmetz filed

---

**15.** Mr. Steinmetz surely would not have hesitated to raise a claim of bias if he had found any basis for it. He testified before Judge Milliken that he had raised the issue of "judicial misconduct" or "judicial bias" four or five times in other appeals, but in this case he saw nothing in the trial transcript "to cause him to consider judicial misconduct or impropriety as an issue."

**16.** We note also a significant difference between this case and *Scott.* Although appellant seeks the same relief as Mr. Scott—a new trial—he is in a different procedural posture. Scott filed a motion under D.C.Code § 23–110 asserting that

he had been denied a fair trial because of the trial judge's violation of Canon 3. Appellant, by contrast, claims ineffective assistance of counsel on appeal, thereby increasing his burden now to show not only that he was denied a fair trial but that he has met the two-pronged test of *Strickland v. Washington.*

**17.** Counsel's performance need only fall "within the wide range of reasonable professional assistance...." *Strickland, supra,* 466 U.S. at 689, 104 S.Ct. at 2065; *accord, e.g., McMann v. Richardson, supra,* 397 U.S. at 770, 90 S.Ct. at 1448 ("reasonably competent counsel").

the petition on August 3, 1988, more than six weeks after the panel decision in *Scott I* had been vacated and this court had agreed to rehear the *Scott* case en banc. Appellant argues that his counsel should have asked the court to stay the instant appeal pending the en banc decision in *Scott.* This argument is premised on two assumptions: first, that the granting of rehearing indicated that a certain result was likely (*e.g.,* that the vacated ruling of the panel would be overturned by the en banc court), and second, that counsel had an obligation to anticipate or predict such a change in the law.

Even if we assume that the grant of rehearing en banc in *Scott* was a signal that the court was considering a change in the law, it is well established that the failure to anticipate a change in the law is not ineffective assistance of counsel. *See, e.g., Johnson v. Armontrout,* 923 F.2d 107, 108 & n. 3 (8th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 106, 116 L.Ed.2d 75 (1991); *Horne v. Trickey,* 895 F.2d 497, 500 (8th Cir.1990); *Knight v. Dugger,* 863 F.2d 705, 733 (11th Cir.1988); *Elledge v. Dugger,* 823 F.2d 1439, 1443 ("Reasonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop"), *modified in part on other grounds,* 833 F.2d 250 (11th Cir.1987), *cert. denied,* 485 U.S. 1014, 108 S.Ct. 1487, 99 L.Ed.2d 715 (1988). Moreover, it is by no means certain that the court would even have entertained a new argument made for the first time in a petition for rehearing en banc. *See Keating v. Federal Energy Regulatory Commission,* 288 U.S.App.D.C. 344, 353–354, 927 F.2d 616, 625–626 (1991) (refusing to consider argument made for the first time in petition for rehearing, and holding that "the argument is waived"). But even assuming that these hurdles can be overcome, we are satisfied that counsel in this case was not ineffective for failing to raise the *Scott* issue in a petition for rehearing en banc for the same reasons, already discussed, that he was not ineffective for failing to raise it in his brief or at oral argument.[18]

## IV. CONCLUSION

We hold that appellant's appointed counsel, Calvin Steinmetz, Esquire, did not render ineffective assistance either on appeal or in connection with the petition for rehearing and rehearing en banc which he filed on appellant's behalf, and that appellant's Sixth Amendment right to counsel was not infringed. We therefore direct the clerk of the court to reissue the mandate in this case in accordance with Rule 41(a) of the Rules of this court.

*It is so ordered.*

18. The government argues that, in any event, the constitutional guarantee of effective assistance of counsel does not extend to this stage of a criminal proceeding. *See Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987) ("the right to appointed counsel extends to the first appeal of right, and no further"); *Lee v. United States,* 597 A.2d 1333, 1334 (D.C.1991) (no right to counsel for purpose of seeking post-conviction relief under D.C.Code § 23–110); *Jenkins v. United States,* 548 A.2d 102, 104 (D.C.1988) (same). This court has held that "[t]he filing of a petition for rehearing en banc ... is not an integral part of the appellate process" because such petitions "are 'not favored' by the court and are granted only under extraordinary circumstances." *Wise v. United States,* 522 A.2d 898, 899 (D.C.1987) (citing D.C.Ct.App.R. 40(e)). Reading *Finley, Lee,* and *Wise* together, the government asserts that there is no constitutional right to an attorney for the purpose of filing a petition for rehearing en banc, and that appellant therefore "cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman v. Thompson,* —— U.S. ——, ——, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991); *see Wainwright v. Torna,* 455 U.S. 586, 587–588, 102 S.Ct. 1300, 1301–1302, 71 L.Ed.2d 475 (1982) (because respondent had no constitutional right to counsel for filing petition for discretionary review in state court, counsel's failure to file petition on time did not constitute ineffective assistance). Thus, says the government, Mr. Steinmetz's failure to raise the *Scott* issue in his petition for rehearing en banc did not impair appellant's Sixth Amendment rights. Given our affirmance on other grounds, we need not decide this point here.