United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 17, 2016          Decided June 27, 2017

No. 15-5056

CARLTON J. BLOUNT,
APPELLANT

v.

UNITED STATES OF AMERICA AND DISTRICT OF COLUMBIA,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cv-01938)

*David M. Lehn*, appointed by the court, argued the cause as *amicus curiae* in support of appellant. With him on the briefs were *Seth P. Waxman* and *Arpit K. Garg*.

*Carlton J. Blount*, *pro se*, filed the briefs for appellant.

*Katherine M. Kelly*, Assistant U.S. Attorney, argued the cause for appellee. On the brief were *Elizabeth Trosman*, *Chrisellen R. Kolb*, *T. Anthony Quinn*, and *Ann K. H. Simon*, Assistant U.S. Attorneys. *Suzanne Grealy Curt*, Assistant U.S. Attorney, entered an appearance.

Before: HENDERSON and GRIFFITH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

Dissenting opinion filed by *Senior Circuit Judge* WILLIAMS.

GRIFFITH, *Circuit Judge*: Carlton Blount is a prisoner convicted of two murders who filed a habeas petition under 28 U.S.C. § 2254. The district court dismissed the petition as time-barred, a decision that Blount now seeks to appeal. But the federal habeas statute restricts such appeals. Blount's "appeal may not be taken to the court of appeals" unless he obtains a certificate of appealability (COA). 28 U.S.C. § 2253(c)(1). To do so, Blount must make a sufficient initial showing to a judge or circuit justice. *Id.* § 2253(c)(1)-(2). Blount requests a COA from us, but because he has not made the necessary showing, we must deny his request.

I

On the night of February 8, 2000, Carlton Blount and two friends attended a basketball game at Blount's former high school. There, Blount and one of his friends got into a fight with a student at the school, Andre Wallace. After onlookers broke up the fight, Blount and his friends left the school and went looking for Wallace. They eventually drove to the home of Wallace's girlfriend, Natasha Marsh, and the couple arrived shortly afterwards. An argument erupted, gunshots ensued, and Wallace and Marsh were killed.

Blount was charged in D.C. Superior Court with several counts, including the murders of Wallace and Marsh. At trial, the government's primary theory was that Blount alone shot the

victims. Blount's defense was that one of his friends pulled the trigger. The judge instructed the jury that even if a friend was the shooter, Blount could be convicted under the doctrine of accomplice liability. The judge's instructions included the following statements:

> It is not necessary that [Blount] have had the same intent that [the] principal offender had when the crime was committed, or that he had intended to commit the particular crime committed by the principal offender.

> An aider and abetter is legally responsible for the acts of other persons that are the natural and probable consequences of the crime in which he intentionally participates.

J.A. 121-22. The defense objected that making Blount responsible for the "natural and probable consequences of the crime" allowed him to be convicted even if he lacked the necessary *mens rea*. Under the judge's instruction, an accomplice could be convicted of first-degree murder without proof that he acted with premeditation and deliberation. That, the defense argued, eliminated the *mens rea* element of the offense, violating the Sixth Amendment's guarantee of a jury verdict on every element. The judge overruled the objection, and in February 2001, the jury convicted Blount of first-degree murder of Marsh, second-degree murder of Wallace, and several related counts. Blount was sentenced to prison for sixty-four years to life.

On appeal, Blount was represented by new counsel, who failed to renew the constitutional challenge to the jury instruction. The D.C. Court of Appeals affirmed Blount's convictions and sentence. It denied his motion for rehearing on

October 13, 2004, and formally ended the appeal by issuing a mandate on October 21, 2004. Blount did not petition the U.S. Supreme Court for review.

About two years later, in an unrelated case, the D.C. Court of Appeals held unconstitutional the same jury instruction used in Blount's case, on the very grounds that Blount had raised at trial. *See Wilson-Bey v. United States*, 903 A.2d 818, 826, 829-44 (D.C. 2006) (en banc). But because Blount's conviction had already been affirmed on direct review, the decision had no immediate effect on him.

Meanwhile, Blount had begun a series of unsuccessful *pro se* collateral challenges to his conviction. On November 16, 2005—over a year after the D.C. Court of Appeals denied his motion for rehearing, the last decision in his direct appeal—Blount signed and mailed from prison to the court a motion for collateral review under D.C. Code § 23-110.[1] The motion included a challenge to the accomplice-liability instruction, but the trial court held the claim procedurally defaulted because Blount had failed to raise it on direct appeal. The court denied Blount's motion and the D.C. Court of Appeals affirmed, issuing its mandate on December 2, 2009.

Blount's next collateral challenge was a federal habeas petition, which he signed on March 17, 2011.[2] Among other arguments, Blount claimed for the first time that he received ineffective assistance of appellate counsel (IAAC) during his

---

[1] There is some dispute as to whether another date—other than the one on which Blount signed and mailed his motion—should be considered the filing date when calculating the limitations period here. We discuss this issue below in section II.B.ii.

[2] The filing date of this petition is also in dispute, as discussed in section II.B.ii.

direct appeal because his appellate lawyer had failed to challenge the constitutionality of the now-discredited jury instruction. The district court dismissed the petition, holding that Blount had not yet exhausted his local remedies on the IAAC claim, and that the court lacked jurisdiction over his other claims. *Blount v. Wilson*, No. 11-0743, 2011 WL 1526945 (D.D.C. Apr. 19, 2011). Both the district court and this court denied Blount's request for a COA. *Blount v. Wilson*, No. 11-7060 (D.C. Cir. Sept. 27, 2011).

Blount then returned to the D.C. Court of Appeals to raise his IAAC claim through the proper local mechanism: a motion to recall the mandate that the court had issued in his direct appeal. *See Watson v. United States*, 536 A.2d 1056, 1060 (D.C. 1987) (en banc) (establishing the motion to recall the mandate as the D.C. procedure for raising an IAAC claim). Although Blount's motion, filed by mail on October 28, 2011, was untimely, the D.C. Court of Appeals excused that flaw and ordered the government to respond on the merits. The court ultimately denied Blount's motion in late 2012, holding that "based upon the entire record, any error was harmless," and therefore Blount had "not met the high standard necessary to recall the mandate." *Blount v. United States*, No. 01-CF-974, at 1 (D.C. Oct. 11, 2012).

Around the same time as Blount made that motion to recall the mandate, he filed a second motion for collateral review under D.C. Code § 23-110, raising claims not directly at issue here. The trial court denied the motion and the D.C. Court of Appeals affirmed in May 2013.

Which brings us to Blount's present federal habeas petition, filed under 28 U.S.C. § 2254 on September 18, 2013. The rules for habeas petitions challenging state-court judgments govern Blount's habeas petition, because the federal

habeas statute "recognizes that 'a court of the District [of Columbia] is a state court.'" *Head v. Wilson*, 792 F.3d 102, 106 n.3 (D.C. Cir. 2015) (quoting *Madley v. U.S. Parole Comm'n*, 278 F.3d 1306, 1308 (D.C. Cir. 2002)). The district court granted the government's motion to dismiss, holding in relevant part that Blount's habeas petition was filed outside the one-year limitations period imposed by 28 U.S.C. § 2244(d)(1), enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, § 101, 110 Stat. 1214, 1217. Blount filed a motion for reconsideration under Federal Rule of Civil Procedure 59(e), which the district court denied, holding again that his petition was time-barred.

Blount timely filed a notice of appeal but failed to obtain a COA from the district court. He now requests one from us. We have jurisdiction over that request under 28 U.S.C. § 2253(c), and we appointed *amicus curiae* to argue in support of Blount.

## II

The procedural history of this case is knotted, and the creative theories raised in Blount's favor only compound that complexity. But the case is complicated, not close. When the knots are untangled and the arguments unpacked, there is no reasonable dispute: Blount's habeas petition was untimely. The answer is thus clear even under the "limited" inquiry we conduct when considering a request for a COA. *Buck v. Davis*, 137 S. Ct. 759, 774 (2017).

To obtain a COA, the applicant must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" is a demonstration "that reasonable jurists could debate whether . . . the petition should

have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Where, as here, "the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim," the successful COA applicant must show us that "jurists of reason would find . . . debatable" not only "whether the petition states a valid claim of the denial of a constitutional right," but also "whether the district court was correct in its procedural ruling." *Id.* at 478.

"Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* at 484. Because Blount's petition was plainly time-barred and no jurist of reason could take issue with that procedural ruling by the district court, we deny his request for a COA without having to reach his constitutional claim.[3]

## A

Blount's habeas petition is subject to a one-year limitations period. *See* 28 U.S.C. § 2244(d)(1). All agree that Blount's one-year clock runs from the date when his judgment of conviction "became final by the conclusion of direct review or the expiration of time for seeking such review." *Id.* § 2244(d)(1)(A). Statutory tolling pauses the clock while "a

---

[3] Because we deny the COA on those grounds, we also decline to address either the district court's alternative procedural holding that D.C. Code § 23-110 barred Blount's IAAC claim or the propriety of Blount's naming the "United States of America (District of Columbia)" as respondent and filing his petition in the U.S. District Court for the District of Columbia.

properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* § 2244(d)(2). In some circumstances, equitable tolling can also apply. *See Holland v. Florida*, 560 U.S. 631, 634 (2010).

Blount's limitations period began to run on January 11, 2005, when time expired for seeking Supreme Court review in the direct appeal of his conviction. *See* J.A. 203 (showing that the D.C. Court of Appeals denied rehearing on October 13, 2004); SUP. CT. R. 13 (providing that the time for petitioning for a writ of certiorari expires ninety days after the denial of rehearing). Three hundred nine days of the one-year limitations period then elapsed before Blount filed a local post-conviction motion under D.C. Code § 23-110 on November 16, 2005, starting statutory tolling. That tolling ended on December 2, 2009, when the D.C. Court of Appeals issued its mandate in the section 23-110 proceedings, *cf. Holland*, 560 U.S. at 638 (ending statutory tolling when mandate issued), and the limitations period's remaining 56 days expired on January 27, 2010. Blount filed his present habeas petition in 2013: over three years later, and thus considerably out of time.

B

The recounting of that timeline provides enough analysis to end the case. Blount and *amicus* raise several alternative theories in an effort to argue that it is at least debatable that his habeas petition was timely. None succeeds.

i

Principally, Blount and *amicus* contend that the D.C. Court of Appeals reopened direct review in 2012, thereby restarting the entire one-year limitations period for Blount's habeas

petition that expired in 2010. Under *Jimenez v. Quarterman*, 555 U.S. 113 (2009), a "conviction [is] no longer final for purposes of § 2244(d)(1)(A)" when a court "reopen[s] direct review of [the] conviction." *Id.* at 120. In that event, the AEDPA limitations clock starts anew when the reopened appeal reaches a final judgment. *See id.* According to Blount and *amicus*, the D.C. Court of Appeals reopened direct review in Blount's case in evaluating his motion to recall the direct-appeal mandate, which Blount made to exhaust his local remedies on his IAAC claim.

That theory fails, however, for the simple reason that the D.C. Court of Appeals never granted Blount's motion to recall the mandate. There is no reasonable debate over whether the motion was granted: the court "ordered that the motion to recall mandate [be] denied." *Blount v. United States*, No. 01-CF-974, at 1 (D.C. Oct. 11, 2012) (capitalization altered). And there is no reasonable debate over whether this disposition reopened the appeal: the D.C. Court of Appeals has never held that denying a motion to recall the mandate reopens an appeal.

To fully explain these issues requires a bit more discussion. When a movant raises an IAAC claim through a motion to recall the mandate, the D.C. Court of Appeals first determines whether the motion has "on [its] face sufficient merit" to justify disturbing the judgment. *Watson v. United States*, 536 A.2d 1056, 1060 (D.C. 1987) (en banc). If so, the court will then "recall[] the mandate and reopen[] the movant's appeal in order to fully explore and then decide whether there was ineffective assistance of counsel on the first appeal." *Id.* at 1061. By reopening the direct appeal, a recall of the mandate resets the filing deadline for a federal habeas petition, regardless of whether the reopened appeal is ultimately resolved in the appellant's favor. But critically, the appeal is not reopened until the motion to recall the mandate is *granted*.

*Id.*; *see also id.* ("A motions panel granted the request [to recall the mandate], vacated our original judgment, and *thereby* revitalized [the] direct appeal." (emphasis added)); *Head v. United States*, 626 A.2d 1382, 1384 (D.C. 1993) ("[B]y granting the motion to recall the mandate, the direct appeal is revived . . . ."). This requirement ensures that "judgments will not be disturbed" except "in the presence of exceptional circumstances." *Watson*, 536 A.2d at 1060. In Blount's case, the D.C. Court of Appeals "ordered that the motion to recall mandate [be] *denied*," *Blount*, No. 01-CF-974, at 1 (capitalization altered) (emphasis added), which left the original mandate intact, the direct appeal closed, and the habeas filing deadline untouched.

Blount and *amicus* try several paths around this obstacle, but each finds a dead end. To begin with, they argue that the D.C. Court of Appeals followed an unconventional procedure in which the court simultaneously denied Blount's motion to recall the mandate, and reopened and rejected his direct appeal. The D.C. Court of Appeals followed a similar procedure in *Long v. United States*, 83 A.3d 369 (D.C. 2013). There, the court granted a motion to recall the mandate raising an IAAC claim and, in the same opinion, resolved the direct appeal by vacating the sentences at issue. *Id.* at 378, 384. The court explained that it was "combin[ing] those procedural steps"— that is, "resolution of the question of the motion's merit and resolution of [the] appellant's re-opened appeal"—because they "require[d] an examination of the same issues, so that a ruling on one [was] essentially a decision on the other." *Id.* at 378 n.15. Blount and *amicus* argue that the D.C. Court of Appeals did the same in his case. In one fell swoop, they argue, the court resolved Blount's motion to recall the mandate and his underlying IAAC claim. By reaching the latter, they argue, the court reopened direct review of Blount's appeal.

First, this argument misreads *Long*. That case, where the court *granted the motion*, tells us nothing new about this case, where the court *denied the motion*. *Long*'s streamlined approach is perfectly consistent with the rule that a motion to recall the mandate reopens an appeal only when granted. In *Long*, the court first "*grant*[*ed*] appellant's motion to recall the mandate as sufficiently meritorious, and *after re-opening appellant's direct appeal*," then resolved the IAAC claim. *Id.* at 384 (emphases added). *Long*'s innovation was to take those two steps in a single opinion. As Blount and *amicus* would have it, however, *Long* also made the two steps equivalent: the court's decision on the motion to recall the mandate becomes the same as a decision on the merits of the IAAC claim in the reopened direct appeal. Not so. Recalling the mandate is antecedent, logically and procedurally, to resolving the direct appeal. Taking both steps in the same opinion made sense in *Long*, because recalling the mandate at the first step allowed it to reach the second step of resolving the appeal, and the court saw no need to wait for a second opinion to do so. When the court refuses to recall the mandate, however, it has no occasion to proceed to the reopened appeal. Put simply, in a single gesture the court can unlock the door and step into the room, but if it leaves the door shut, it can go no further.

Second, even if Blount and *amicus* were right that D.C. law somehow allows a court to resolve the underlying IAAC claim even when declining to recall the mandate, the D.C. Court of Appeals did not do that here. The court concluded only that Blount "ha[d] not met the high standard *necessary to recall the mandate*." *Blount*, No. 01-CF-974, at 1 (emphasis added). The court did not go beyond that threshold inquiry and take up whether Blount met the standard for vacating his conviction on direct review. According to *amicus*, there are signs that the court did actually reach the underlying appeal: for instance, the court invoked the merits of Blount's IAAC claim, based its

decision "upon the entire record," *id.*, and issued a separate order requesting a response from the government. But those signs do not contradict the court's declaration that it applied only the standard for recalling the mandate; instead, they are fully consistent with that disposition. The movant's "heavy initial burden" requires him to make "a persuasive case for recall of the mandate" by showing that the IAAC claim has "sufficient merit" to warrant reopening the appeal and giving the claim full consideration. *Watson*, 536 A.2d at 1060. To determine whether Blount's IAAC claim had sufficient merit, the court assessed it in light of the record and the government's arguments. Concluding that Blount failed to satisfy his initial burden, the court never moved beyond that threshold inquiry.

Having failed to show that the D.C. Court of Appeals recalled the mandate by using the procedure followed in *Long*, Blount and *amicus* take a different tack. They argue that the court's analysis in denying the motion to recall the mandate was so much like what the court would have done on direct review that the court effectively reopened direct review. In particular, they note that the court denied Blount's motion on the ground that his IAAC claim lacked merit, which is the same analysis the court would have conducted if reviewing a reopened direct appeal. With no direct support for this notion of functional equivalence, Blount and *amicus* extrapolate from the Supreme Court's statement in *Jimenez* that when a court reopens an appeal, the "conviction [is] again capable of modification through direct appeal to the state courts and to [the Supreme Court] on certiorari review." 555 U.S. at 120. Blount and *amicus* argue that the D.C. Court of Appeals functionally treated Blount's conviction as "capable of modification" by assessing the merits of his IAAC claim.

We reject this argument, too. The D.C. Court of Appeals does not reopen a completed appeal simply because its

reasoning in denying a motion to recall the mandate mirrors the reasoning it would use on a reopened appeal. That logic leads to incongruous results. Consider a hypothetical motion to recall the mandate raising a wholly frivolous IAAC claim. The court would deny the motion because the IAAC claim is frivolous. If the court were reviewing a reopened direct appeal with the same claim, the court would likewise conclude that the claim is frivolous. According to the argument advanced by Blount and *amicus*, because the court performed the same analysis when reviewing the motion to recall the mandate as it would have if reviewing a reopened direct appeal, resolving the motion reopened direct review. But that would mean that any habeas petitioner could unilaterally reopen direct review and restart his limitations clock simply by filing a frivolous motion to recall the mandate. That cannot be. Instead, the court must deliberately agree to reopen direct review. Here, the court refused to do so.

*Jimenez* does not suggest otherwise. The passage on which Blount and *amicus* rely simply describes what happens after a state court issues an "order . . . 'restor[ing] the pendency of the direct appeal.'" 555 U.S. at 120 (quoting *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)). After such an order, the conviction becomes "again capable of modification through direct appeal to the state courts and to [the Supreme Court] on certiorari review." *Id.* Here, the D.C. Court of Appeals issued no order restoring the direct appeal. The order instead *denied* the motion to recall the direct-appeal mandate. Blount's conviction thus never became capable of modification "through direct appeal to" the D.C. courts or the U.S. Supreme Court. Those courts could hear no new direct appeal while the original direct-appeal mandate remained in effect.

14

In short, the D.C. Court of Appeals did not reopen Blount's direct appeal because the court never recalled the mandate.[4] Our dissenting colleague would resolve the issue differently, but we share a key premise. He concludes that the D.C. Court of Appeals reopened Blount's appeal because its "disposition of Blount's motion comprised both a decision to recall and a decision on the merits." Dissenting Op. at 16. We agree that would be the disposition necessary to reopen the appeal. But we struggle to understand how the court could have "deci[ded] to recall," *id.*, when it expressly "ordered that the motion to recall mandate [be] denied," *Blount*, No. 01-CF-974, at 1 (capitalization altered). Because we see no reasonable debate over whether the D.C. Court of Appeals denied Blount's bid to reopen his appeal, he is not entitled to a COA on this theory.

ii

In the alternative, Blount argued to the district court that he is entitled to equitable tolling that would make his habeas petition timely. Although he does not press that argument before us in his *pro se* briefs, court-appointed *amicus* does. *Cf. Bowie v. Maddox*, 642 F.3d 1122, 1135 n.6 (D.C. Cir. 2011) ("We have no qualms about addressing an argument raised by

---

[4] It may appear harsh at first glance not to adjust Blount's limitations clock after his motion to recall the mandate languished in the D.C. courts. But we expect (with no need to decide here) that statutory tolling would pause the clock during such proceedings, because a motion to recall the mandate raising an IAAC claim is a form of local "post-conviction or other collateral review." 28 U.S.C. § 2244(d)(2). Even if this were so, however, Blount would not benefit from statutory tolling because his time ran out before he filed his motion to recall the mandate. That is why he must take the more aggressive position that his motion restarted the clock altogether. As we have explained, that position is clearly incorrect.

court-appointed amicus curiae and not by the pro se party on whose behalf he was appointed to present arguments."). *Amicus*'s first theory of equitable tolling is that Blount's first federal habeas petition should have been stayed and held in abeyance, an approach endorsed in *Rhines v. Weber*, 544 U.S. 269 (2005). Under that theory, because the limitations clock would have stopped while the first petition was held in abeyance, equitable tolling would apply from the filing of Blount's first petition until the filing of the present one. Second, *amicus* argues that Blount's pursuit of judicial remedies through his first petition, although unsuccessful, warranted equitable tolling during the pendency of that petition. *Cf. Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) ("We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period . . . .").

But under either theory, equitable tolling begins only when Blount filed his first federal habeas petition. By then the limitations period had already expired. As explained above in section II.A, the limitations period expired on January 27, 2010, and Blount's first federal habeas petition was filed over a year later, in March 2011.[5] Regardless of the legal merits of

---

[5] *Amicus* suggests that the filing date of the first petition is uncertain, but the uncertainty does not affect our analysis. Blount signed the petition on March 17, 2011, S.A. 7, so he presumably filed it on that date or later. But Blount claimed before the district court in the present proceedings that he filed the petition in December 2010, and the government failed to object. *See* Amicus Br. 12 & n.4. Regardless of whether we consider the petition filed in December 2010 or March 2011, the filing date came long after the limitations period expired in January 2010.

*amicus*'s theories, neither theory would start equitable tolling early enough to make Blount's petition timely.

*Amicus*'s only response is that we should modify our calculation of the limitations period in two ways, both of which *amicus* concedes are actually incorrect. Amicus Br. 10 & n.3, 41-42. First, *amicus* wants us to use June 6, 2005 as the filing date for Blount's first motion under D.C. Code § 23-110, which starts statutory tolling. In the district court, the parties and the court assumed that was the proper filing date, but that was wrong twice over. For one, the date appears to be a typographical error meaning to refer to June 5, 2006, the date on which the D.C. Superior Court docketed the motion. *See* J.A. 190. For another, the docketing date is not the filing date. The motion was filed when Blount mailed the motion on November 16, 2005. *See* S.A. 69-70; *Houston v. Lack*, 487 U.S. 266, 276 (1988) (holding that a prisoner files a document at the time he "deliver[s] it to the prison authorities for forwarding to the court clerk"). Next, *amicus* wants us to adopt a second error from the government's district-court briefing: using October 4, 2010, when the Supreme Court denied certiorari review of Blount's first section 23-110 motion, as the end date for statutory tolling. But Supreme Court review does not count towards statutory tolling, so the correct end date is December 2, 2009, when the D.C. Court of Appeals issued its mandate. *See Lawrence v. Florida*, 549 U.S. 327, 329 (2007) (holding that a petition for certiorari does not extend statutory tolling); *Holland*, 560 U.S. at 638 (ending statutory tolling when mandate issued).

Only if we adopted both errors would Blount's first habeas petition appear timely, making *amicus*'s equitable-tolling theories viable. *Amicus* argues that we should do so because the government waived any objection. As *amicus* observes, the government included both errors in its district-court briefing,

mistakenly stated in its appellate briefing that Blount's first federal habeas petition was timely, and failed to respond to *amicus*'s waiver argument.

We will use the correct dates, despite the government's repeated failure to argue for them. *Cf. Nattah v. Bush*, 605 F.3d 1052, 1058 (D.C. Cir. 2010) ("[W]e may affirm the district court's decision 'on the basis of any grounds which support it.'" (alterations omitted) (quoting *In re Swine Flu Immunization Prods. Liab. Litig.*, 880 F.2d 1439, 1444 (D.C. Cir. 1989)); *cf. also Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court . . . retains the independent power to identify and apply the proper construction of governing law."). It is particularly clear that we have no basis to adopt the first error of using June 6, 2005 as the filing date for Blount's first D.C. Code § 23-110 motion. That date is not only wrong, but it is undisputedly and indisputably so. As explained above, it is an apparent typographical error without a scintilla of support in the record or the law. To treat the section 23-110 motion as filed on June 6, 2005—and to treat Blount's first habeas petition as timely and his equitable tolling theories as viable— would be to decide the case on facts and law that all know to be false.

Even if a party's waiver or forfeiture could ever lead a reasonable jurist to accept such an erroneous premise, there is no justification for doing so here. Notwithstanding the government's mistake, Blount had ample notice of the issue and opportunity to argue the point. In fact, it was *amicus*— raising the equitable-tolling arguments in support of Blount— who candidly identified the date error. Even more significantly, Blount himself introduced the error. His habeas petition, the opening filing in the present litigation, averred that he filed his D.C. Code § 23-110 motion "[o]n June 6, 2005." J.A. 6. That

may well have been an honest mistake, but all the same, the government and district court used that date only after Blount did first. We see no reason why Blount should get the benefit of an error he introduced. Instead, under all these circumstances, we think it obvious that the correct date should apply.

Finally, AEPDA's waiver rules do not require otherwise. True, under AEDPA a court may not "bypass, override, or excuse [the government's] deliberate waiver of a limitations defense." *Wood v. Milyard*, 132 S. Ct. 1826, 1830 (2012); *cf. also id.* at 1833-34 (explaining that a court may, however, excuse the unintentional forfeiture of a timeliness defense). But the government has not waived, forfeited, or conceded its defense that Blount's current petition is untimely. Far from it: the government raised that defense below, prevailed, and now argues for affirmance on that ground. The government merely failed to make a particular argument, based on the correct date calculation, in support of that defense. Nor did the government waive its limitations defense against Blount's *first* habeas petition. To be sure, the government wrongly stated in the present proceedings that the first petition was timely. But that statement does not somehow retroactively waive a defense from the prior proceeding.

In sum, the equitable-tolling theories do not justify a COA. The thread by which those theories hang—that we should calculate Blount's limitations period using a date all agree is wrong—is too thin to make the issue debatable.[6]

---

[6] Our dissenting colleague writes that we have conducted a "full-blown merits review" rather than a threshold COA inquiry. Dissenting Op. at 1, 3-4. To his accusation that we "focus[] squarely on the merits," *id.* at 3, we admit that *some* review of the merits is

19

III

We conclude that jurists of reason would not find debatable the district court's procedural holding that Blount's

_____

unavoidable in "a threshold inquiry into the underlying merit of the claims," *Buck*, 137 S. Ct. at 774 (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)). But he overstates the nature of our analysis. We have reviewed the merits only to answer a limited question: Are the issues close, or is it clear that dismissing Blount's petition was correct? To the extent the dissent objects to the *amount* of analysis we perform, we acknowledge that our opinion could have been shorter (though the outcome no different) had we merely computed the limitations period, *see* section II.A, and left it at that. But we thought it better for all if we described Blount's arguments for a different computation and explained why we found them clearly unavailing. We find it difficult to believe that the COA standard requires us to make our opinion more cursory. And to be clear, we have not impermissibly given "full consideration to the factual or legal bases adduced in support of the claims," *Buck*, 137 S. Ct. at 773 (quoting *Miller-El*, 537 U.S. at 336). We have done nothing more than reject Blount's timeliness theories on their face. We have also refrained from reaching a number of factual and legal questions in the case, including whether equitable tolling is required by *Rhines v. Weber*, 544 U.S. 269 (2005), or *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990), and whether Blount's IAAC claim is entitled to habeas relief. In the end, if our opinion looks to our dissenting colleague like a rejection of Blount's arguments on the merits, that is because, as the Supreme Court has observed, "when a court of appeals properly applies the COA standard and determines that a prisoner's claim is not even debatable, that necessarily means the prisoner has failed to show that his claim is meritorious," *Buck*, 137 S. Ct. at 774. As we see it, we have simply asked whether Blount's arguments rise to the level of reasonable debate. We conclude that they do not.

petition was time-barred. We therefore deny Blount's request for a certificate of appealability.

*So ordered.*

WILLIAMS, *Senior Circuit Judge*, dissenting: My colleagues have determined that no "jurists of reason would find . . . debatable" whether Carlton Blount's habeas petition is timely. See Maj. Op. at 7 (quoting *Slack v. McDaniel*, 529 U.S. 473, 478 (2000)). As a jurist formerly known as reasonable, I disagree. In the form of a Certificate of Appealability ("COA") analysis, the majority performs a full-blown merits review on the timeliness of Blount's petition— exhausting legal and factual arguments, crafting a new rule for interpreting state law, and invoking the court's rarely-used discretion to forgive the government its concessions. Such an analysis is inappropriate at the COA stage, as the Supreme Court clearly held only a few months ago. *Buck v. Davis*, 137 S. Ct. 759 (2017). In fact, Blount's contentions easily pass the Court's threshold COA test. More importantly, once over that modest hurdle, Blount's claims on appeal warrant a remand to the district court. I first explain why Blount's claims entitle him to a COA, and, having done so, propose a merits disposition.

\* \* \*

In 2001 a District of Columbia jury was asked to determine if Blount committed murder, a specific intent crime. Over defense counsel's objection, the trial court instructed the jury that Blount could be convicted even if he did not intend to commit murder. Transcript, *United States v. Blount*, No. F-983-00, at 73-75 (D.C. Super. Ct. Feb. 20, 2001). All the jury needed to find was that (1) Blount "intentionally participate[d]" in some crime and (2) that murder was a "natural and probable consequence" of that crime. *Id*. Blount was, quite unsurprisingly, convicted. On appeal, his new counsel neglected to raise the rejection of trial counsel's objection to the jury instruction, and the conviction was affirmed. Blount's conviction is thus marred by two prima facie constitutional errors. The jury instructions

omitted necessary elements of the crime. See *United States v. Gaudin*, 515 U.S. 506, 509-10 (1995); see also *Wilson-Bey v. United States*, 903 A.2d 818, 826, 843-44 (D.C. 2006) (en banc) (finding the same jury instructions unconstitutional). And Blount's appellate counsel did not challenge the substance of these instructions, though the error was compelling and properly preserved. See *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (articulating Sixth Amendment test for appellate counsel's "failure to raise a particular claim"); see also *Strickland v. Washington*, 466 U.S. 668 (1984). His appellate lawyer's error, bound up with the trial court's error, is the subject of Blount's current petition.

Blount filed this petition (his second) over a dozen years after his conviction. Absent some reason to stop the clock, it would appear untimely against the one-year statute of limitations in 28 U.S.C. § 2244(d)(1). But Blount has offered two reasons for us to find him entitled to have the merits of his petition addressed.

First, Blount claims that he is entitled to equitable tolling of the statute of limitations as of the date he filed his first federal habeas petition. That petition contained the same claim as the current one, but it was dismissed for lack of exhaustion (Blount had not yet employed the District's device for seeking relief on his claim of ineffective appellate counsel, i.e., asking the D.C. Court of Appeals to recall its mandate). Assuming that the first petition was timely (a fact the government conceded), and assuming that it was improperly dismissed rather than stayed (a highly probable conclusion), Blount would be entitled to equitable tolling for a reasonable period, thereby overcoming the time barrier.

Second, and independent of the first argument, Blount asserts that the D.C. Court of Appeals re-opened his case on October 11, 2012, when it adjudicated his motion to recall the mandate. As per *Jimenez v. Quarterman*, 555 U.S. 113 (2009), a state court's decision to re-open an appeal resets the limitations period. If the D.C. Court of Appeals in fact re-opened Blount's case, then it would not have become "final" again until January 9, 2013, when the 90-day window closed on petitioning for certiorari of the October decision; § 2244(d)(1)'s one-year limit would thus give him until January 2014 to file a new petition. Blount filed his current petition in 2013, so it would also be timely if his re-opener theory is correct.

My colleagues examine both issues, but they create a chimerical beast, neither COA nor merits analysis and in disregard of the sequence mandated by statute and the Supreme Court. Before *Miller-El v. Cockrell*, "[m]any Courts of Appeals decisions ha[d] denied applications for a COA only after concluding that the applicant was not entitled to habeas relief on the merits." 537 U.S. 322, 348 (2003) (Scalia, J., concurring). The Supreme Court put an end to that practice, declaring that a COA is a "threshold question" that "should be decided without 'full consideration of the factual or legal bases adduced in support of the claims.'" *Buck*, 137 S. Ct. at 773 (quoting *Miller-El*, 537 U.S. at 336). A court cannot *de facto* "decid[e] the case on the merits" and then use that determination to deny the COA. *Id.* In *Buck* the Fifth Circuit had issued a brief unpublished opinion that "phrased its determination in proper terms" of the COA standard, *id.*, insisting that it was performing an "[i]nitial examination" and merely looking for any "plausible argument" on the merits, see *Buck v. Stephens*, 623 F. App'x 668, 673-74 (5th Cir. 2015). But the Court looked past those recitations to find that

the Fifth Circuit's analysis was "essentially" the same as would be performed on an actual merits review. *Buck*, 137 S. Ct. at 773.

The majority today also focuses squarely on the merits— but does so with even less pretense of a COA analysis than in the Fifth Circuit's *Buck* opinion. Although a "thorough" consideration of the issues certainly suggests that we've moved beyond the COA stage, see *Buck*, 137 S. Ct. at 774, the primary fault of the majority opinion isn't that it's lengthy and detailed, compare Maj. Op. at 18-19 n.6; the problem, as we'll see, is that it resolves a number of subtle issues, clearly debatable among reasonable jurists (as here).

That is a "fundamental" error, *Miller-El*, 537 U.S. at 342, though one whose correction would likely do Blount no good—the majority opinion leaves little doubt that my colleagues would deny the claim if they recognized the merits as being properly before the panel. In any event, the merits analysis they perform is not simply inappropriate at this stage; it is, as I explain after discussing the COA, incorrect.

To warrant a COA Blount need only show that reasonable jurists could disagree about *one* of his two procedural arguments, along with, of course, his constitutional claim of right. See *Slack*, 529 U.S. at 478 (COA should be granted when the prisoner shows "at least" that reasonable jurists could disagree over both the procedural propriety and the substance of the petition). On the equitable tolling point, the government has insisted to us that Blount's first habeas petition was timely. Gov't Opposition to Mot. for COA, No. 15-5056, at 4 n.5 (July 27, 2015) ("Gov't Opp."); see Maj. Op. at 16. Given this concession, tolling for a reasonable

period from that date could render the second petition timely as well.

But relying on our discretionary authority to forgive "the government's [] failure," my colleagues resolve that the first petition was time barred and that any tolling from that date would be pointless. Maj. Op. at 16-17. How such a forgiveness becomes indisputable among reasonable jurists I cannot fathom. In *Day v. McDonough*, 547 U.S. 198 (2006), the Court found discretion in the courts to overlook a state's mistaken assertion that a habeas petition was timely; it agreed with the state's contention that the exercise of that discretion should depend on "whether the administration of justice is better served by dismissing the case on statute of limitations grounds or by reaching the merits of the petition." *Id*. at 208-09. The Court later cautioned in *Wood v. Milyard*, 132 S. Ct. 1826 (2012), that "appellate courts ordinarily abstain from entertaining issues that have not been raised and preserved" and that they "should reserve" their *Day* "authority for use in exceptional cases." *Id*. at 1834.

The majority disregards the principle of *Day v. McDonough*, paying no attention to its instruction to consider whether the administration of justice is better served by holding the government to its concession. Instead the majority insists that Blount's argument would require deviating from certain "correct dates" and expresses doubt that a "waiver or forfeiture could ever lead a reasonable jurist" to deviate so, at least not without justification beyond the concession itself. Maj. Op. at 16-17. But under *Day* and *Wood* those doubts are misplaced. And treating Blount's first petition as timely would not require changing any of the majority's reconstructed dates. As the majority agrees that equitable tolling would begin "when Blount filed his first

federal habeas petition," *id*. at 15, and the government conceded the timely filing of that petition, Gov't Opp. at 4 n.5, the majority's calculations merely show that Blount needs what is being requested: equitable tolling for every day *between* the first and second petitions.

It makes no difference that the government never waived its statute of limitations defense to the current, second petition. Maj. Op. at 19. The government's explicit concession that Blount's *first* petition was "filed . . . within the one-year statute of limitations," Gov't Opp. at 4 n.5, if accepted by us, opens the door to equitable tolling and defeats the government's general timeliness objection to the *second*. Under the Court's cases, the government's concession (even if erroneous) should be excused only in "exceptional" circumstances. See *Wood*, 132 S. Ct. at 1834; *Day*, 547 U.S. at 209-10. The majority offers nothing remotely exceptional here.

In exercising the discretion allowed by *Wood* and *Day*, my colleagues have chosen to respond to the government's errors with easy magnanimity, and to Blount's diligence with merciless exactitude. This approach is particularly troubling given the strength of Blount's underlying *Strickland* argument. See *Rhines v. Weber*, 544 U.S. 269, 278 (2005) (courts should be wary of dismissing "potentially meritorious" habeas claims). And regardless of how my colleagues treat the government's concession, they are incorrect to insist on fully resolving that issue at the COA stage. "[A] court of appeals should not decline the application for a COA merely because it believes the applicant will not demonstrate an entitlement to relief." *Miller-El*, 537 U.S. at 337.

In some cases, a choice might be discretionary but nonetheless obvious to any reasonable jurist. Not so here, where the default rule lies in Blount's favor (a party must live with its concessions) and Blount's constitutional claim is likely to succeed. Blount's equitable tolling argument is hardly one we can say all reasonable jurists would reject. He has thus made the necessary showing on the procedural part of the COA. (Blount's *Jimenez* theory would also survive the threshold analysis suitable for a COA, but as Blount's equitable tolling argument is enough to earn him a COA for review of the district court's procedural holding, I discuss *Jimenez* only below, as an alternative route for reversal in the appeal proper.)

The substance of Blount's *Strickland* claim also deserves a COA. When it adjudicated Blount's motion to recall the mandate, the D.C. Court of Appeals "did not decide" the first *Strickland* prong, deficiency, but may have ruled on the second prong, prejudice—reasonable jurists would therefore decide deficiency *de novo* and review prejudice with deference to that court. See *Porter v. McCollum*, 558 U.S. 30, 38-39 (2009); see also 28 U.S.C. § 2254(d). In *Robbins*, the Supreme Court adopted the Seventh Circuit's formula for ascertaining deficiency when counsel omitted an issue on appeal: appellate advocacy is constitutionally deficient when "ignored issues are clearly stronger than those presented." 528 U.S. at 288. Blount has offered more than enough evidence on this front. His appellate counsel neglected to challenge the unconstitutional jury instructions even though that challenge had been preserved by trial counsel and those instructions "w[ere] under active criticism and discussion at the time," *Blount v. United States*, No. 08-CO-959, slip op. at 1 (D.C. Nov. 10, 2009) ("*Blount II*") (affirming denial of post-conviction relief for the jury instruction error, because

Blount's appellate counsel had no "cause" to omit that claim). The minor weaknesses of this argument—e.g., the possibility that the error could be found harmless, see *Neder v. United States*, 527 U.S. 1, 4 (1999)—offer scant reason for omitting it. And it remains far more compelling than the points Blount's appellate counsel did raise, contentions almost bound to lose, such as that the court admonished trial counsel too harshly during cross-examination and that it was error to give an accomplice instruction because the indictment failed to allege accomplice liability. See *Blount v. United States*, No. 01-CF-974, slip op. at 3-7 & n.12 (D.C. June 29, 2004) ("*Blount I*") (affirming conviction on direct appeal).

As for the prejudice prong, the D.C. Court of Appeals stated that "based upon the entire record, any error was harmless due to the overwhelming evidence presented at trial." *Blount v. United States*, No. 01-CF-974, slip op. at 1 (D.C. Oct. 11, 2012) ("*Blount III*") (order adjudicating motion to recall the mandate). That analysis misses the nuance of the test mandated by *Robbins*: whether there is "a reasonable probability that, but for his counsel's unreasonable failure . . . he would have prevailed on his appeal." 528 U.S. at 285. Thus it would suffice for Blount to show, as he has, a reasonable probability that the original appellate panel would have rejected the government's claim of harmlessness beyond a reasonable doubt. When you multiply a fraction of a burden (reasonable probability) by a fraction of a burden (rebutting government's contention that the jury instruction made no difference beyond a reasonable doubt), you get a *smaller* fractional burden: Blount need establish only a reasonable probability that the government might not have established harmless error. The D.C. Court of Appeals was incorrect to require Blount to rebut the government's harmlessness contention entirely. Whether that mistake amounts to an

"unreasonable application" of *Strickland*, reasonable jurists might debate.  See 28 U.S.C. § 2254(d).  And that is all that Blount need show "at this stage," where "we only ask whether . . . deference" to the state court decision is "debatable amongst jurists of reason."  *Miller-El*, 123 S. Ct. at 1042.

For these reasons, the majority should have granted the COA rather than issue, as they did, an advisory opinion on the merits followed by a summary denial of the COA.  As I find grounds for granting the COA, I now proceed to the appeal proper, on which I find the majority's advisory opinion mistaken.  Readers may wonder why I did not simply grant the certificate myself and thus provide my colleagues with jurisdiction to reach the merits decision that they do.  A circuit judge acting alone is authorized to grant a COA.  28 U.S.C. § 2253(c)(1); Fed. R. App. Pro. 22(b)(1)-(2).  But as far as I can tell, no judge has ever taken that step in this court, certainly not after panel oral argument.  I have chosen not to do so partly out of comity but more out of futility; a move to the more difficult appeal stage would—so far as appears—not yield a difference in my colleagues' conclusion.  Nonetheless, I now move on to the merits, the logical sequel to my view on the COA.

\* \* \*

Turning to "full consideration" of the procedural merits, *Buck*, 137 S. Ct. at 773, I find Blount entitled to equitable tolling—covering the time spent adjudicating Blount's first federal petition as well as the short periods it took him to go from our court back to the D.C. Court of Appeals and from there back to federal court.  (Blount's time litigating the motion to recall the mandate can be tolled as a matter of course.  See Maj. Op. at 13-14 n.4.)  Equitable tolling is

appropriate under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, when the prisoner "has been pursuing his rights diligently" and "some extraordinary circumstance stood in his way." *Holland v. Florida*, 560 U.S. 631, 649 (2010). Blount has certainly been diligent. He filed his motion to recall just 31 days after the COA on his first petition was denied. Compare *Blount v. Wilson*, No. 11-7060 (D.C. Cir. Sept. 27, 2011) (denying COA) with Mot. to Recall Direct Appeal Mandate, *Blount v. United States*, No. 01-CF-974 (mailed October 28, 2011). As for an extraordinary blocking circumstance, that can be found in the ill-advised handling of Blount's first petition, which the district court (along with this court) construed too narrowly and dismissed too readily, rather than holding it in abeyance for Blount to exhaust his District remedy.

Blount had not exhausted his *Strickland* claim before he brought his first petition. But "pleading errors may be corrected through the liberal construction or amendment we are accustomed to providing a *pro se* prisoner." *Davis v. U.S. Sentencing Comm'n*, 716 F.3d 660, 667 (D.C. Cir. 2013). Blount's *Strickland* claim was intertwined with one that had been exhausted in District post-conviction proceedings: that the jury charge was unconstitutional. See *Blount v. Wilson*, No. 11-7060, at 1-2 (noting that the first petition appeared to raise both claims). Blount had already challenged those instructions via the District's procedure for post-conviction relief, D.C. Code § 23-110. See *Blount II* at 1. Although the D.C. Court of Appeals acknowledged that the instructions were "improper," it affirmed the denial of that challenge because he had not raised the issue on direct appeal. *Id.* When his federal habeas petition is read to focus on that claim, the *Strickland* argument still plays a role; it serves to

excuse his procedurally defaulting in his direct appeal. See *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Blount's first petition then, was a mix of both exhausted and unexhausted claims. And "it likely would be an abuse of discretion for a district court to deny a stay and dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Rhines*, 544 U.S. at 278. Blount's mixed petition satisfied each *Rhines* element.

First, Blount's unexhausted claim had considerable merit; second, his failure to exhaust was due, at least in part, to the District's byzantine process for pursuing *Strickland* claims of appellate representation; and third, he did not—and had no incentive to—engage in "dilatory litigation tactics," as those tactics would prolong his time in prison. Dismissing Blount's first petition also ran counter to our precedent on unexhausted *Strickland* claims flowing to us from the D.C. Court of Appeals. In *Streater v. Jackson*, 691 F.2d 1026 (D.C. Cir. 1982), a petitioner for federal habeas for ineffective assistance of appellate counsel had been stymied by the then prevailing uncertainty in the District over where such a claim could get review. Recognizing the interaction between that confusion and the requirement of exhausting state remedies, we held the federal petition in abeyance so that the petitioner could pursue whatever the District might offer. *Id*. at 1028. Both *Rhines* and *Streater* show that Blount's first petition should have been stayed, not dismissed.

Equitable tolling would correct this unfortunate mistake and retroactively stop the clock during the pendency of Blount's first petition and during the reasonable amount of time it took Blount to file his motion to recall and his second

federal habeas petition. The district court was incorrect to deny Blount equitable tolling, and its decision should be reversed.

Blount's *Jimenez* claim also warrants reversal. The D.C. Court of Appeals views its procedure for *Strickland*-based motions to recall the mandate (its sole remedy for constitutionally defective appellate counsel) as a two-step process. There is a decision on the motion itself, and then, if the motion is granted, full consideration of the *Strickland* claim and the merits of the recalled appeal. See *Long v. United States*, 83 A.3d 369, 378 & n.15 (D.C. 2013).

The parties here appear to agree that the first stage does not qualify as a re-opening under *Jimenez* but that the second does. That shared assumption seems a reasonable reading of *Jimenez*, where the Court specifically found that, as a matter of plain meaning, 28 U.S.C. § 2244(d)(1)(A)'s trigger for the AEDPA's one-year habeas limitations period—"the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review"—encompasses not only standard conclusion of direct review but also instances where a state court re-opens and re-concludes direct review. 555 U.S. at 119-20.

But as *Long* itself illustrates, the D.C. Court of Appeals may collapse into a single proceeding its grant of the motion to recall and its adjudication of the re-opened appeal. 83 A.3d at 378 n.15.[1] A composite process would also count as re-

---

[1] There are, practically speaking, three steps combined in *Long*: an initial *Strickland* inquiry when reviewing the motion to recall the mandate; the post-recall complete *Strickland* analysis; and the adjudication of the claim that should have been brought in the

opening direct review, and Blount claims this occurred in his case.  In *Long* the movant ultimately prevailed in the re-opened appeal, but there is nothing preventing the use of *Long*'s streamlined process in cases where the movant ultimately loses (as did Blount).  The two steps in the D.C. Court of Appeals's process impose successively increasing burdens on the defendant: he need only show "sufficient merit" to pass the first stage but can only prevail in the second stage after the court "fully explores" his *Strickland* claim.  *Griffin v. United States*, 598 A.2d 1174, 1175-76 (D.C. 1991) (emphasis and internal quotation marks omitted).  As a matter of logic, a court can, in a single proceeding, find that a movant clears the lower hurdle but not the higher one.  Indeed, this ladder of increasing burdens should sound familiar: it is the process AEDPA's COA provision calls for us to follow here—analyze the COA and then (if we grant the COA) address the merits.

My colleagues recognize the possibility of a combined grant-and-reject process.  See Maj. Op. at 11.  But they insist that when the D.C. Court of Appeals claims it has dismissed a motion at the first stage, we must end our inquiry, even if that court's "reasoning . . . mirrors the reasoning it would use on a reopened appeal."  *Id*. at 12. They reject Blount's "notion" of analyzing what a state court actually *did*, preferring to treat as final what it *said it did*.  See *id*.

---

original appeal.  *Id*. at 378-84 (performing initial *Strickland* analysis, full *Strickland* analysis, and plain error analysis simultaneously, then remanding to district court because there was plain error).  Performance of either of the latter two steps would indicate re-opening.

Blount's "notion," though, flows from the Supreme Court's command: we are to analyze the state court decision to see if "in fact" it re-opened the appeal. *Jimenez*, 555 U.S. at 120 n.4. "[F]or purposes of applying" AEDPA provisions "that interact[] with state procedural rules, we look to how a *state procedure functions, rather than the particular name that it bears*." *Carey v. Saffold*, 536 U.S. 214, 223 (2002) (emphasis added). Federal courts applying AEDPA are admonished not to take what the state court said it was doing "as an absolute bellwether" for what it actually did. *Id*. at 226. Doubtless there may be close cases, such as this one, but accepting the burden of adjudicating these cases is, in the Supreme Court's judgment, radically preferable to willful ignorance. Closing ourselves off to reality does no honor to state courts and no justice to habeas petitioners.

Still, my colleagues contend that horrendous consequences would flow from treating a denial of a motion to recall the mandate as a reopening of the appeal—even in cases where the state court's reasoning "mirrors" what it "would use on a reopened appeal." Maj. Op. at 12-13. The majority envisions prisoners evading time limits altogether as they endlessly filed frivolous motions to recall the mandate. See *id*. But state and federal courts have formidable tools to prevent such gamesmanship. First, the D.C. Court of Appeals invites little chance of re-opening when it follows its standard practice of dismissing motions to recall when they are facially insufficient. Here though, the court issued multiple orders, noted the apparent sufficiency of Blount's claims, and applied the legal standard appropriate for a re-opened appeal. See Dissent, *infra*, at 15-16. Second, there is the District's 180-day deadline for motions to recall the mandate, after which the D.C. Court of Appeals may dismiss a motion procedurally with no hint of re-opening. D.C. Ct. App. R. 41(f). The court

15

waived that bar in Blount's case, further indicating its desire to plumb the merits. Finally, any fear of meretricious re-opening must assume extraordinary sloppiness on the part of federal courts in interpreting state court decisions. We are quite capable of comprehending that though all cats have four legs (with a few exceptions), not all animals with four legs are cats. Characterizing a motion to recall as frivolous may "mirror[]" a merits dismissal for frivolity, but the reasoning would be inconsistent with any idea that the court went on to the second stage of its procedure. Compare Maj. Op. at 12-13.

I would follow the Supreme Court's example in *Carey*, looking to the substance of the D.C. Court of Appeals's decision, not its form. Judged from this perspective, the decision almost certainly re-opened Blount's appeal. After Blount filed his motion, the D.C. Court of Appeals released an order noting that "the jury may have relied upon the aiding and abetting instruction which included the 'reasonable and probable consequences' language this court held to be unconstitutional"; requesting a response from the government; and concluding that Blount "appear[ed]" to have raised a viable *Strickland* claim. Order, *Blount v. United States*, No. 01-CF-974 (D.C. Aug. 29, 2012). Thus the court seems to have concluded that "on their face" Blount's claims had "sufficient merit," see *Watson v. United States*, 536 A.2d 1056, 1060 (D.C. 1987) (plurality); see *Griffin*, 598 A.2d at 1176, and that it was necessary "to consider more fully and then decide" whether a *Strickland* violation had occurred, see *Stratmon v. United States*, 631 A.2d 1177, 1178 (D.C. 1993) (internal quotation marks omitted). That is precisely the reasoning the D.C. Court of Appeals uses when it "recall[s] the mandate." See *Stratmon*, 631 A.2d at 1178.

Consistent with this interpretation of the first order, the court's next order on Blount's motion appears to involve the type of "full[] explor[ation]" one expects in a recalled appeal. See *Griffin*, 598 A.2d at 1176. As mentioned in my discussion of Blount's *Strickland* claim, the second order invoked the precise legal test, harmless error, that should govern the re-opened appeal. See *Blount III* at 1. Thus it went well beyond what would have been necessary simply to deny recall of the mandate. Compare Maj. Op. at 11-12. To be sure, the D.C. Court of Appeals's precedents on this issue are somewhat confusing. Despite case law asserting that the motions to recall are decided "on their face," *Watson*, 536 A.2d at 1060, the D.C. Court of Appeals once ordered "an evidentiary hearing by the trial court" on such a motion, *Stratmon*, 631 A.2d at 1180. But the best reading of the decisional array appears to be that the D.C. Court of Appeals's disposition of Blount's motion comprised both a decision to recall and a decision on the merits. Thus this panel would have done well to find Blount's petition timely by virtue of *Jimenez* as well as the equities (and certainly within the realm of reasonable disagreement).

Finding grounds for granting the COA and for ultimately finding Blount's petition not time-barred, I would reverse on the timing issue and remand for the district court to address the merits of the constitutional claim. See *Mickles-El v. D.C. Gov't*, No. 98-7019, 1998 WL 846649, at *1 (D.C. Cir. Nov. 24, 1998).

I respectfully dissent.